IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT P. BURGWALD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE GEO GROUP, INC. | : | NO. 06-CV-2032 |

Ditter, S.J.                                                                                      March  27, 2008

## MEMORANDUM AND ORDER

Plaintiff Robert F. Burgwald alleges he was wrongfully discharged by the GEO Group, Inc.,[1] in retaliation for his request for reasonable accommodations after suffering a heart attack. GEO has moved for summary judgment and asserts that Burgwald was not disabled under the ADA and was dismissed after he was found sleeping on duty.  For the reasons that follow, GEO's motion for summary judgment will be granted.

1. Factual Background[2]

Burgwald began his employment with GEO in 1999 as a law librarian.  In 2000, he became a prison counselor and also worked overtime in the records department.  Burgwald's regular hours were from 8:00 a.m. to 4:00 p.m., Monday through Friday.  He worked overtime hours by coming in before his regular shift to work at the central records department, generally around 4:00 a.m.  In January 2001, Burgwald began working full-time in the central records department and continued to work twenty to twenty-four additional hours of overtime each week.

---

[1] The GEO Group is a private company that operates correctional facilities throughout the country including the George W. Hill Correctional Facility where Burgwald was employed.

[2] The parties have submitted a statement of uncontested material facts and separate statements of contested facts they deem material.  Where the facts are in dispute, I consider the evidence in a light most favorable to the Burgwald as the non-moving party.

Burgwald testified that he initially wanted to work overtime hours for the extra income. *See Pl. Exh. C, Burgwald Dep.,* p. 41, Oct. 19, 2006. However, even before his heart attack he wanted to stop working overtime because he "was burned out" and he began his efforts to change his hourly position to a salaried position in March 2003. *Id.* at 54; *Pl. Exh. 3,* p.4 (Memo to Tim Nuss, July 27, 2004).

On August 29, 2003, Burgwald suffered a heart attack. He was cleared to return to work ten days later on September 8, 2003. The note from his cardiologist, Samuel R. Ruby, M.D., included one limitation – that Burgwald not lift more than fifteen pounds. Burgwald's request that he be permitted to leave work three times per week for approximately two hours to attend cardiac rehabilitation during his lunch break was approved by Warden Caulfield.[3] Burgwald advised his immediate supervisor, Tim Nuss, of the Warden's approval in a September 23, 2003 memorandum that also stated:

> I need to change the time and number of hours I work due to my heart condition. I have been diagnosed with heart disease. I have already addressed this with the warden asking to be given a regular 40 hour week with salary. He told me this would be discussed with you.

*Def. Exh. F*.

Throughout 2004, Burgwald continued to work the same amount of overtime each week resulting in approximately $20,000 a year in overtime pay. Burgwald continued to advise Nuss that he no longer wanted to work overtime and that he wanted to be placed in a salaried position. However, Burgwald never refused to work overtime and did not complain to anyone in GEO, i.e., the human resources department or corporate headquarters, that his request for a reduction in

---

[3] This accommodation lasted until December 2003.

hours following his heart attack was being denied by Nuss.  There is nothing in the record to indicate that Burgwald suffered any adverse effects from this additional work – in fact, his health has continued to improve and he has continued to work overtime at his present place of employment.

Burgwald's ability to reduce his hours is in dispute.  Burgwald claims he was required to work overtime and Nuss testified that Burgwald could have stopped working overtime whenever he wished.  For purposes of this motion, I accept Burgwald's assertion that overtime was required.  What is not factually disputed is Nuss's assertion that he was unable to change Burgwald's position to a salaried one.  *Def. Exh. D, Nuss Dep.*, p. 32, Nov. 27, 2006.  According to Nuss, Burgwald's central records position did not meet the criteria for a salaried position because it did not include the requisite decision-making and supervisory responsibilities.  *Id.* at 33.  Burgwald has presented no facts to dispute this assessment of his job responsibilities.[4]

In June 2004, Ronald Nardolillo became the warden of this facility.  On August 6, 2004, Burgwald wrote a memo to Warden Nardolillo regarding the position posting for a Criminal Justice Advisor, stating:

> My memo to Tim Nuss concerning Central Files work has made you aware that I am trying to address this overtime issue.  I have been trying to get my position changed over to a salaried position.  The opening in this Criminal Justice Advisor position creates an opportunity to do this.
>
> This position is simply not worth the $55,000 salary it paid the

---

[4] In fact, Burgwald includes as an exhibit in his response an exchange of e-mails from November and December 2004 on this very issue.  These e-mails describe Burgwald's "pushing very hard to become salaried" and request a review of his position and determination on his exemption status.  A questionnaire on his specific duties and responsibilities was forwarded to be completed by Burgwald.  There is no mention of a need to reduce his hours because of his heart condition.  There is no indication that Burgwald completed and returned the questionnaire.  *Pl. Exh. 13.*

> employee who is leaving. I would like the opportunity to elaborate on this privately with you. I can back up my position on this.
>
> This position could be given a salary of $35,000 - $40,000. This would result in a savings that would be applied to my salary. I have detailed my work in my previous memo to you. This Criminal Justice position never came close to doing the volume of work I do. This position never did the sensitive work I do in legal matters and grievances. The sad reality is that no matter how hard I work; Tim Nuss refuses to recognize that. You can change that. I will be awaiting your reply.

*Def.'s Exh. G.*

In this memorandum written almost a full year after his heart attack, Burgwald notes his efforts to deal with the "overtime issue" and to get a salaried position, but he makes no mention to Warden Nardolillo of any disability or need for accommodation. He never spoke to the warden or anyone else about the memorandum. *Def.'s Exh. C, Burgwald Dep.* at 90. Warden Nardolillo was not aware that Burgwald had had a heart attack until February 2005. *Def.'s Exh. Q, Aff. of Nardolillo* at ¶ 2; *Exh. I, Nardolillo Dep.* p. 16, Nov. 29, 2006. He was also not aware that Burgwald was working overtime when the facility was trying to cut overtime costs. *Id., Aff.* at ¶ 3; *Dep.* at 16, 59-61. Burgwald never spoke to the warden about his hours or desire to stop working overtime. *Id., Aff.* at ¶ 4; *Dep.* at 16.

When the warden received this memorandum from Burgwald, he referred it to Nuss to handle. *Nardolillo Dep.* at 21-22. The issue of a salaried position was also discussed with Burgwald's new manager, Tom Savage, but Burgwald's request was never granted and he remained an hourly employee working overtime until he was discharged.

On January 15, 2005, at approximately 4:30 a.m., Sergeant Steven Russo, a K-9 officer, was performing a check of the administration building when he alleges he found Burgwald

sleeping and had to awaken him.  Burgwald denies he was sleeping and testified that he was on his break when the officer entered his work station.  Burgwald heard nothing more about this encounter until February 23, 2005, when he was notified to report to Lieutenant Gannon's office.  At that meeting Burgwald was advised that he was being investigated for sleeping on duty.  On March 7, 2005, Burgwald was notified by certified letter from Warden Nardolillo that his employment was terminated for sleeping on duty, gross negligence in the performance of duty, refusal to cooperate with an official inquiry for investigation into a work-related matter, and substandard performance of duty.  *See Def. Exh. K*.

Burgwald contends that he is a qualified individual who was refused a reasonable accommodation that he not be required to work overtime.  He further asserts that his termination was in retaliation for attempting to obtain such an accommodation and that GEO's investigation was "woefully deficient and in reality a sham to justify improperly terminating plaintiff's employment."  *See Pl.'s Resp.* at 3.

2. Discussion

The standard for summary judgment is well established.  I must consider the evidence in a light most favorable to the non-moving party and, if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.  However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion.

A. Alleged Disability

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, prohibits employers from discriminating against "a qualified individual with a disability because of the

disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

To establish a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998). To be disabled under 42 U.S.C. §12102(2)(A), a plaintiff must have a physical or mental impairment that substantially limits one or more major life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479 (1999); 29 C.F.R. § 1630.2(h)-(j).

First, GEO disputes that Burgwald's coronary artery disease constitutes a physical impairment under the ADA. The undisputed facts support this assertion. Burgwald suffered a heart attack that resulted in his missing less than two weeks of work. He was able to return to full time employment with an accommodation for several months of cardiac rehabilitation and no lifting of more than fifteen pounds. Although he did not want to continue working overtime, and he asserts his doctor told him not to work overtime, he was able to do so without any problems for the next year and a half and at no time did he refuse to work overtime.

Assuming that working is a major life activity under the ADA, Burgwald has not presented and I have not found any legal basis for finding he is substantially limited in his ability to work because he was unable to work overtime. *See Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511, 514 (D. Md. 2002). "To the contrary, courts have uniformly held that 'an inability to work overtime is not a substantial limitation on the ability to work.'" *Id*., at 514-15 (citing numerous circuit and district court cases).

Moreover, even if the inability to work overtime could substantially limit one's ability to work, Burgwald's demonstrated ability to do the required overtime work refutes his claim. It is not enough for an ADA plaintiff to "merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).[5]

Because Burgwald has failed to show that his condition placed substantial limitations on his ability to work, he has failed to establish that he is disabled under the ADA. Therefore, GEO is entitled to judgment as a matter of law on Burgwald's ADA and PHRC claims.

B. <u>Retaliation</u>

Burgwald also contends that his termination was in retaliation for his accommodation

---

[5] Burgwald has made no argument that the lifting restriction had any impact on his ability to work. *See Sharkey v. Fed. Exp. Corp.*, 2000 U.S. Dist. LEXIS 2041 (E.D. Pa. 2000) (citing cases rejecting claims that lifting restrictions constitute a *per se* significant restriction on any major life activity).

request.  For a claim of retaliation under the ADA, Burgwald must show that:  (1) he was engaged in a protected employee activity; (2) that GEO took an adverse action either after or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse action. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002)).  It is not necessary that Burgwald show he is disabled under the ADA, but he must show that he had a reasonable, good faith belief that he was entitled to a reasonable accommodation.

     Burgwald claims that the "temporal relationship between [his] request for his accommodation and his termination [is] indicative of retaliation, or unusually suggestive of retaliatory motive." *Pl. Resp.*, at 18.  The most favorable interpretation of this claim would be that he was engaged in the protected activity of seeking accommodation for his disability and as a result he was terminated.  However, he discusses no facts that support this assertion and he does not explain his theory on the temporal relationship between his requests for a salaried position that predated his heart attack and continued intermittently for more than a year after his heart attack and his termination.  In fact, his last memorandum in which he tries "to address this overtime issue" was dated August 6, 2004, more than five months before the incident that eventually led to his termination and more than seven months before he was discharged.  Such circumstances do not suggest a causal relationship between a protected activity and an adverse action.  *See e.g., Williams,* 380 F.3d at 760 (two months not unduly suggestive).  Without evidence of any intervening antagonism or retaliatory animus, the passage of time in this case is conclusive against Burgwald and he has therefore failed to establish a causal link as a matter of law.  *Id.*

Having determined that Burgwald has not established a *prima facie* case of retaliation, there is no need to consider whether there were any deficiencies in the termination process that would support his claim that the decision to terminate was a pretext.  *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  I will also grant summary judgment on the retaliation claim.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT P. BURGWALD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE GEO GROUP, INC. | : | NO. 06-CV-2032 |

**O R D E R**

AND NOW, this    27th    day of March, 2008, IT IS HEREBY ORDERED that the defendants' motion for summary judgment (Dkt. # 27) is GRANTED and the complaint is dismissed with prejudice.

BY THE COURT:


/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.